1  CELIA MCGUINNESS, Esq. (SBN 159420)
   STEVEN L. DERBY, Esq. (SBN 148372)
2  ANTHONY GOLDSMITH, Esq (SBN 125621)
   DERBY, McGUINNESS & GOLDSMITH, LLP
3  300 Lakeside Drive, Suite 1000
   Oakland, CA 94612
4  Telephone: (510) 987-8778
   Facsimile: (510) 359-4419
5  info@dmglawfirm.com

6  Attorneys for Plaintiff
   JILLIAN CROCHET
7

8              IN THE UNITED STATES DISTRICT COURT
            IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10

11  JILLIAN CROCHET,                     CASE NO.

            Plaintiff,                   Civil Rights
12
    v.                                   **COMPLAINT FOR INJUNCTIVE RELIEF
13                                        AND DAMAGES**

14  CALIFORNIA COLLEGE OF THE
    ARTS; STORER TRANSPORTATION      1.  **Violation of the Americans with
15  SERVICE dba STORER - SAN             Disabilities Act Title III [42 U.S.C. §
    FRANCISCO; STORER                    12182(a), *et seq.*]**
16  TRANSPORTATION SERVICE dba
    STORER COACHWAYS; MISSION       2.  **Violation of the Rehab Act of 1973 [29
17  SMARTSPACE SENIOR LLC dba THE       U.S.C. 794, *et seq.*]**
    PANORAMIC; and LATITUDE 38
18  HOUSING SERVICES LLC dba         3.  **Violation of the Fair Housing Act**
    URBANESTS,
19                                   4.  **Violation of the Fair Employment and
            Defendants.                  Housing Act**
20
                                     5.  **Denial of Full and Equal Access [Cal.
21                                       Civil Code §§ 54, *et seq.*]**

22                                   6.  **Violation of the Unruh Act [Cal. Civil
                                         Code § 51, *et seq.*]**
23
                                         **DEMAND FOR JURY TRIAL**
24

25

26                      **INTRODUCTION**

27       1.      Defendants California College of the Arts and the companies with which it

28  contracts for student housing and shuttle bus services are discriminating against its student,

Plaintiff Jillian Crochet and other persons with disabilities.  Defendant California College of the Arts failed to construct and maintain safe and accessible facilities as required by federal and State law.  It failed to grant reasonable accommodations based on disability.  Along with its housing contractor, it fails to provide accessible housing.  And along with its student shuttle bus vendor, it fails to provide safe and accessible transportation for Plaintiff and other students with disabilities.

2.     Despite Plaintiff's many requests to Defendant CCA, Defendants have failed and refused to come into compliance with the laws protecting the civil rights of people with disabilities.  Plaintiff has been physically injured as a result of their willful failure to comply. Defendants' illegal behavior continues to this day.  Plaintiff therefore brings this lawsuit to enforce her rights.  She seeks an order requiring Defendants to make their facilities and services accessible to her and others similarly situated. Plaintiff also seeks damages, attorneys' fees, costs and litigation expenses.

## JURISDICTION

3.     This Court has original jurisdiction of this action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq.*

4.     The Judicial District of the United States District Court for the Northern District of California has supplemental jurisdiction over the State law claims alleged in this Complaint pursuant to 28 U.S.C. §1367(a).  All the claims derive from a common nucleus of operative facts and arose out of the same transactions.  The State law claims are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

## VENUE

5.     Venue in the Judicial District of the United States District Court for the Northern District of California is in accordance with 28 U.S.C. §1391(b) because Plaintiff's claims arose within this Judicial District and the properties that are the subject of this action are located in this

District in the Cities of San Francisco and Oakland, California.

## THE PARTIES

6.      At all times relevant to this Complaint, Plaintiff was a graduate student enrolled at the California College of the Arts in its Master of Fine Arts program.  At all times relevant Plaintiff was a person with a disability as defined in 42 U.S.C. § 12102 and California Government Code § 12926(l).  She has a rare condition that causes ataxia, loss of sensation in the arms and legs, vision problems and other symptoms.  Her condition affects the following body systems: Neurological, musculoskeletal, and/or cardiovascular.  Plaintiff's condition substantially limits major life activities, including standing, walking, balancing, lifting and carrying.  Plaintiff cannot perform these activities in the same manner, speed, duration and stamina as the average person.  Moreover, Plaintiff has a history of and/or has been diagnosed and/or classified as having a physical impairment.  Currently she uses a motorized wheelchair or a walker for mobility, though at times in the past she also has used a cane and an electric mobility scooter.

7.      The California College of the Arts (CCA) is a privately-owned and operated, nonprofit college of art, design, architecture, and writing.  It is a California nonprofit public benefit corporation.  It has two campuses in California, one in San Francisco and one in Oakland. It enrolls approximately 1,500 undergraduates and 500 graduate students annually.   Based on publicly available records Plaintiff is informed and believes and thereupon alleges that CCA receives federal financial assistance within the meaning of the Rehab Act of 1973, 29 U.S.C. 794, *et seq.*

8.      Defendant, Storer Transportation Service, a California Corporation is a privately-owned and operated business, which also does business as Storer – San Francisco and Storer Coachways.  They will be referred to in this Complaint collectively referred to as ("Storer").  Storer's website advertises it "has a fleet of motorcoaches with capacities of 54, 45, 21 and 11 passengers.  Storer Coachways 45 and 54 passenger motorcoaches are equipped with all the latest and greatest amenities."  It claims its buses are "meticulously maintained by expert

maintenance personnel to ensure your trip is worry free."

9.      Defendant CCA is the owner, operator, lessee and/or lessor of the California College of the Arts as a public accommodation, open to the public under the laws of the United States and the State of California.  Defendant Storer was and is the owner, operator, lessee and/or lessor of Storer – San Francisco and/or Storer Coachways as a public accommodation, open to the public under the laws of the United States and the State of California.

10.     Based upon publicly available records including the CCA website, Plaintiff is informed and believes, and thereon alleges, that Defendants CCA and Storer, and each of them were, at all times relevant to the action, the owner, operator, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner or joint venturer of each other and were acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of them, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to each other.

11.     Defendant Mission Smartspace Senior LLC, a limited liability company, dba The Panoramic ("Smartspace") is the owner of the real property known as "The Panoramic Residences", a residential building located at 1321 Mission St, San Francisco, California. Defendant Latitude 38 Housing Services LLC, a limited liability company, dba Urbanests ("Urbanests") is the operator of The Panoramic Residences.  Together, these two defendants will be referred to as "Latitude 38."   Smartspace, and Urbanests are each a privately-owned and operated business. Each is a limited liability corporation doing business in California.  The business of each of them is to provide housing for students and interns and manage housing for colleges and universities.  Urbanests is the housing division of Latitude 38.  The Latitude 38 website states that it both owns properties and "manages the full spectrum of services from administration to coordinating with [schools] and finalizing placement.  We save on your [schools'] employment cost and mitigate your legal responsibilities by managing all aspects of your student housing."  https://www.urbanests.com/property-owners/, last visited December 4, 2019. Its average tenant stays three months to one year. *Id.*

///

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

12.     Based upon publicly-available records including its websites and the CCA website, Plaintiff is informed and believes and thereupon alleges that Defendants CCA, Smartspace and Latitude 38 are the owners and/or operators, lessor and lessee of The Panoramic Residences as a public accommodation, open to the public under the laws of the United States and the State of California. During all times relevant to the Complaint, Defendants CCA, Smartspace and Latitude 38 operate The Paramount as a business establishment under the laws of the State of California because they provide goods, services and/or facilities in exchange for money.

13.     Based upon publicly available records including the CCA website, Plaintiff is informed and believes, and thereon alleges, that Defendants CCA, Smartspace and Latitude 38, and each of them were, at all times relevant to the action, the owner, operator, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner or joint venturer of each other and were acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to each other.

14.     During all times relevant to the Complaint, Defendants CCA, Storer, Smartspace and Latitude 38, and each of them, operate as a business establishment under the laws of the State of California because they provide goods, services and/or facilities in exchange for money.

**FACTS COMMON TO ALL CLAIMS**

15.     Since 2017 Plaintiff has been a student at CCA, in the Master of Fine Arts program.  She lives in a residence hall operated by CCA.  She uses CCA facilities on both the San Francisco and Oakland Campuses and has done so continually since September 2017. Plaintiff has submitted all the paperwork CCA requires to register as a disabled student. Defendant CCA has actual knowledge that she has a physical disability that limits her mobility,

and that she uses a walker or wheelchair for mobility.

**CCA DENIED PLAINTIFFS' REASONABLE ACCOMMODATION REQUESTS FOR HOUSING**

16.     In March 2019, Plaintiff moved into a CCA residence hall, Panoramic Residences.  On information and belief, Defendant CCA leases all or part of the building from its owner, Defendant Smartspace, and manager, Defendant Latitude 38, and together they operate it as student housing.  According to the CCA website, "Up to 200 CCA students occupy the second through sixth floors exclusively."

17.     CCA offers several housing options at the Panoramic Residences, comprising single- and double-occupancy apartment units at various price points.  The double-occupancy units are less-expensive (per student) than the singles.  Plaintiff learned that the double rooms may not be wheelchair accessible.  She explained to Defendant's Director of Housing that she needed an accessible room and asked whether the double rooms were accessible.  The Housing Director replied, "I don't think so."  Other administrators later confirmed that the double-occupancy units were not accessible.   Therefore, Plaintiff was excluded from choosing a double-occupancy unit.

18.     Therefore, Plaintiff asked, as a reasonable accommodation of her disability, to be housed in a single room at the per-person double room rate.  She provided a letter from her doctor stating she needs an accessible room to accommodate her disability.  Defendant CCA denied her request to pay the lower double room rate.  A CCA administrator told Plaintiff she had consulted with CCA's lawyer, who said that so long as CCA was charging the lowest single rate, "that is all we have to do."  As a result, to date Plaintiff has been charged approximately $4,000 per year more than she would be in a double room, because the double rooms are not accessible to her.  This extra cost is a source of considerable stress and financial hardship to Plaintiff.

19.     When Plaintiff moved into her residence, she found that she could not control the ventilation system in her unit, and that very frequently the heat is on, regardless of the outside

temperature.  Maintenance staff came to her unit but could not correct the issue.  Excess heat exacerbates Plaintiff's ataxia, impairing her mobility and balance, causing her pain and fatigue, and interfering with her ability to be a productive student.

20.     Therefore, Plaintiff made a reasonable accommodation request that Defendant CCA install air conditioning in her unit to counteract the heat, or alternatively to assist her to install a window cooling unit that she purchased.  Defendant refused both requests.  After a struggle, Plaintiff managed to install the window unit herself, but she has to keep a window open at all times, so she cannot use it during fire season and the rainy season.

## LATITUDE 38 FAILED TO PROVIDE ACCESSIBLE FACILITIES IN A BRAND-NEW RESIDENTIAL BUILDING

21.     The Panoramic Residences is, according the website of Latitude 38, "a brand-new high-rise residence for students and Interns."  http://www.panoramiclivingsf.com/index.html, last visited December 4, 2019.  Based upon the website and upon publicly-available records Plaintiff is informed and believes that it was built after 1993 when the ADA and Fair Housing Act construction standards went into effect.  Plaintiff was informed by a CCA housing administrator, and on that basis believes, that there are no designated disability-accessible double-occupancy units at The Panoramic Residences.

Although Plaintiff informed CCA that she needs accessible housing, the unit to which she was assigned lacks accessible features.  Defendants CCA and Latitude 38 have not made it accessible.  Plaintiff alleges that some parts of the Panoramic Residences qualify as public accommodations within the meaning of the ADA and Disabled Persons Act and that these areas are not constructed and/or maintained as required by the regulations governing public accommodations.  Plaintiff is informed and believes, and upon that basis alleges, that the housing and common areas at The Panoramic Residences violate the regulations for accessible construction under federal law, including the Uniform Federal Access Standards promulgated under the Rehab Act of 1973 and applicable to residential housing under the Fair Housing Act, the 2004 Americans with Disabilities Act Accessibility Guideline, and the 1991 Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities.   In addition, they violate

State building regulations contained in Title 24, Part 2, Volume 1 of the California Code of Regulations, commonly referred to as the California Building Code (the "CBC"), both Chapter 11A (residential facilities) and Chapter 11B (public accommodations).

**CCA FAILED TO CONSTRUCT, AND TO THIS DAY FAILS TO MAINTAIN, ACCESSIBLE DOORS AND PATHS OF TRAVEL THROUGHOUT ITS FACILITIES**

22.     Based upon a review of publicly available documents, Plaintiff is informed and believes and thereupon alleges that the San Francisco campus (known now as "the main building" and previously as "the Montgomery campus") at 1111 – 8th Street was opened for first occupancy in the year 1999.  Subsequently, CCA opened the Graduate Center at 184 Hooper Street and the MFA Studios at 2565 - 3rd Street.  It also owns and/or operates other gallery space, common use space, and student housing in San Francisco and on the Oakland campus.

23.     On information and belief, each of these facilities was constructed for first use and/or altered after 1970.  Therefore, the facilities were required to comply with construction regulations for disability access which have been in effect since the early 1970's on both the State and the federal level.

24.     Most of the paths of travel on both campuses are not accessible to Plaintiff. Doors throughout the campuses are too heavy for her to open.  She has measured some of these doors to require an average of more than 20 pounds of force to open.  By law, none of them should require more than 15 pounds of opening force, and those which are not fire-rated should not be more than 5 pounds.

25.     Because the doors are too heavy, Plaintiff struggles to open them, causing her physical pain and potential shoulder and arm injury.  Often, she must ask passersby for assistance to open doors, which she finds embarrassing, frustrating and infantilizing.  Making such requests draws attention to her disability and reduces her ability to live as an independent member of the community.

26.     Many doors also close too quickly.  When Plaintiff manages to get a heavy door open, she must swing around it and rush to get through the door before it closes on her back or on her wheelchair.

27.      Even doors that are paddled with automatic door openers frequently do not function.  When they break down Plaintiff again is reduced to struggling with their weight or asking others for assistance.  After she complained that the door on the designated accessible restroom in the Hooper building was too heavy, Defendant installed an automatic door opener but later removed it.  Plaintiff does not know why.

28.     Other automated doors swing into the clear door space, in violation of access codes.  Plaintiff has to engage the opener on these doors, then hurry out of the way so she isn't struck when they open.

29.     Since September 2017, Plaintiff has made many, many requests directly to CCA administrators and to facilities staff, to repair and correctly maintain the paddled automatic doors.  CCA does not repair the doors timely.  Sometimes Plaintiff has had to make multiple requests before a door is repaired.  CCA has claimed a door paddle was operational, only to admit later it was not.  CCA's failure to construct and maintain its doors in an accessible condition is a policy and practice that is discriminatory.  CCA places the onus for identifying broken doors on Plaintiff, causing her ongoing frustration, embarrassment and stress.

30.     In addition, paths of travel on both campuses contain other barriers to access.  For instance, the path of travel that has been designated "accessible" in the brand-new graduate studio facilities (opened in 2018) is indirect, segregated from the main student entrances and difficult to navigate.  Barriers include elevators that don't always function, a ramp that lacks clear space for door opening, and paths that are often strewn with accumulated garbage.  Many of the doors have doorknobs, which are not accessible hardware and are difficult for her to use.  She often resorts to "kicking" the doors open with her wheelchair kickplates which is damaging to the chair but is her only option when there is no one present to help her.  In March 2019 her doctor wrote a letter to CCA asking them to install more automatic doors and lever-style handles, but Defendant has not done so.

31.     This segregated, difficult path of travel marks Plaintiff as "other" based on her disability.  There are some parts of both campuses, including studio space, that Plaintiff cannot even enter because doors are too narrow, paths are impeded, and/or the only point of access is stairs.  Thus, she cannot participate in common curricular and extra-curricular activities such as visiting these areas of the studio to observe art being made by fellow students. Her inability to participate in these activities impairs her education and again calls attention to her disability, highlighting her difference from her cohort.

32.     These conditions constitute deviations from the most basic disability access standards under federal law, including the Uniform Federal Access Standards promulgated under the Rehab Act of 1973, the 2004 Americans with Disabilities Act Accessibility Guidelines, and the 1991 Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities. In addition, they fail to conform with State building regulations contained in Title 24, Part 2, Volume 1 of the California Code of Regulations, commonly referred to as the California Building Code (the "CBC"). Plaintiff is informed and believes, and upon that basis alleges, that these and other elements on both the San Francisco and Oakland campuses violate the regulations for accessible construction.

**CCA AND STORER FAIL TO PROVIDE ACCESSIBLE SHUTTLE SERVICES, CAUSING PLAINTIFF PHYSICAL INJURY**

33.     Defendant CCA operates a shuttle service for students, staff and faculty.  Based upon Defendant CCA's website, Plaintiff is informed and believes and thereupon alleges that at all times relevant to this Complaint, Defendant CCA has a contract with Defendant Storer, which provides large, Greyhound-style buses for the shuttle and employs the drivers.

34.     The shuttle operates between the Oakland and San Francisco campuses, stopping at several San Francisco campus locations.  The shuttle is available to all students at no out-of-pocket cost. It runs on a fixed daily schedule, which is posted on Defendant CCA's website. Able-bodied students may take the shuttle simply by hopping on or off at any stop.  But not all

the shuttle buses provide accessibility lifts.  If Plaintiff wants to use the shuttle, each semester she has to contact Storer herself to inform itof the specific days and times she will use the bus. Storer will commit to providing an accessible bus only on those routes. If she wants to change her schedule, she must provide Storer at least 24 hours' notice.  Thus, a schedule is imposed upon her that is not imposed on any able-bodied student. Unlike her able-bodied cohort, she can never change her mind at the last minute, behave spontaneously, or schedule (or attend) last-minute meetings or events.

35.     Despite complying with this discriminatory, unequal requirement to plan her use of the shuttle service in advance, Plaintiff still cannot rely upon having an accessible shuttle. Since September 2017, Plaintiff has experienced shuttle buses that show up without lifts or ramps or whose equipment is broken.  One was held in place with duct tape.  Drivers have been unable or unwilling to operate the wheelchair lift and have requested that she get out of her wheelchair and climb onto the bus herself while they store her chair underneath the bus, because "you can walk."

36.     At other times drivers have refused to tie down her wheelchair with straps as required by law, leading her chair to tip over inside the bus when it turned a corner.  Plaintiff has been physically injured more than once.

37.     More than one time, the bus has been delayed over an hour while a driver struggled with the lift and the other CCA students stood around and stared, becoming more and more frustrated.  Though the CCA students have always been kind, Plaintiff is humiliated each time it happens.  She knows she is not the cause of the problem, yet she also knows that but for her presence, the other students' lives would not be interrupted.

38.     Defendants CCA and Storer are on actual, written notice of these problems and have been since 2017.  Plaintiff has expressly informed CCA that its shuttle service is not equally accessible to her and has made requests for reasonable modification of the shuttle service policies, practices and procedures.  CCA has communicated to Storer Plaintiff's complaints and her request for reasonable modifications of Storer's policies, practices and procedures. Defendants, and each of them, have denied these requests.  Storer has more than once promised

1   it would check the function of each accessible bus before leaving the yard, but yet the lifts

2   frequently fail to function – or the drivers are not trained to use them.  A CCA administrator has

3   witnessed at least one instance when an accessible shuttle did not arrive as Storer had promised.

4        39.     Plaintiff has spent hours emailing Defendant CCA, continually notifying that a

5   problem happened again.  The problems continue to this day.

**PLAINTIFF HAS NO CHOICE BUT TO CONTINUE STRUGGLING UNDER
THESE CONDITIONS UNTIL CCA AND STORER CEASE THEIR
INTENTIONALLY DISCRIMINATORY POLICIES AND PRACTICES**

9        40.     Plaintiff is trapped in this pervasively discriminatory milieu.  She has done

10   everything she can, over the course of two years, to inform Defendant CCA of the various

11   problems, to compromise and to cooperate.  So long as she is a student at CCA she will continue

12   to face these experiences.  She is not willing to withdraw from graduate school in order to avoid

13   them, nor should she be expected to do so.  However, there are many times when Plaintiff is

14   deterred from going onto campus or taking the shuttle because she does not feel physically or

15   emotionally strong enough to tackle the many barriers that she knows she will encounter.

16        41.     Ironically, Defendants hold themselves out as accessible and welcoming to people

17   with disabilities.  Defendant CCA touts its accessibility on many pages of its website.  It has

18   used Plaintiff's photograph on its website.  It represents to the public that Plaintiff is part of the

19   "Community" while, by their refusal to address her concerns, deliberately excluding her.

20   Defendant Storer's website claims it is a "pioneer" in the transportation of people with

21   disabilities and as a paratransit operator.   https://storercoachways.com/about-us/ (last visited

22   November 20, 2019).   Defendant Latitude 38, on its Corporate Social Responsibility webpage,

23   states that it supports the Children's Cerebral Palsy movement to "improve quality of life and

24   future outcomes" and "reshap[e] our culture."   https://www.urbanests.com/csr/, last visited

25   December 4, 2019.

26        42.     All Defendants are established, sophisticated corporate entities that trade upon the

27   image of disabled persons to establish their *bona fides* and sell their services. For these reasons

28   and others, Plaintiff is informed and believes and thereupon alleges that Defendants, and each of

them, are familiar with the disability access requirements that apply to their facilities and have applied for decades.  Based upon the fact that Defendants must have been aware of their obligations to their disabled patrons, yet  built and allowed the physical and policy barriers to access to remain since the facilities opened,  Plaintiff alleges that Defendants' behavior is intentional:  They maintain discriminatory facilities and policies and practices of failing to maintain accessible features, in conscious disregard of the civil rights of Plaintiff and others similarly situated.

**FIRST CLAIM**
**As to All Defendants**
**(Violation of the Americans with Disabilities Act of 1990)**

43.     Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff was denied full and equal enjoyment of and access to Defendants' goods, services, facilities, privileges, advantages or accommodations in violation of the ADA.  Each Defendant owns, leases and/or operates a public accommodation as defined in 42 U.S.C. section 12181(7).  The condition of Defendants' facilities and/or the manner in which Defendants provided goods and services fail to provide full and equal access to Defendants' goods and services in public accommodations as required generally by the provisions of 42 U.S.C. sections 12182(a) and 12182(b)(1)(A).  As set forth in this Complaint, Plaintiff has been specifically subjected to discrimination in violation of 42 U.S.C. sections 12182(b)(2)(A)(iii); 12182(b)(2)(A)(iv); 12182(b)(2)(A)(v); 12183 and 12188 because Plaintiff is denied equal access to and enjoyment of the CCA campus, the public accommodation areas of her housing, the shuttle bus service and the buses themselves.

**Physical Barriers to Access**

44.     Defendant CCA has failed to remove architectural barriers to access on both campuses.  The ADA prohibits, in pertinent part: "A failure to remove architectural barriers . . . that are structural in nature, in existing facilities . . . where such removal is readily achievable." 42 U.S.C.  § 12182(b)(2)(A)(iv).

45.     Plaintiff alleges that the removal of each of the specific barriers that Plaintiff

- 13 -

encountered as set forth above, was at all times, "readily achievable" pursuant to the factors set forth in the ADA and the applicable regulations adopted by the United States Department of Justice under the ADA (said regulations being set forth in 28 CFR Part 36).  Further, assuming *arguendo* that Defendants were able to meet their burden of production and of proof that the removal of the defined architectural barriers (or any of them) was or is not "readily achievable," Defendant CCA has failed conspicuously to make its goods, services, facilities, privileges, advantages and/or accommodations available through alternative readily achievable methods pursuant to the requirements of 42 U.S.C. section 12182(b)(2)(A)(v). Additionally, Defendant CCA has conspicuously failed to obey the provisions of section 28 CFR §36.211 that require public accommodations to maintain features that are required to be accessible.

46.     The ADA specifically prohibits discrimination against persons with disabilities in the construction and alteration of public accommodations.  Most of the CCA campus and the student housing, are public accommodations.   42 U.S.C. section 12183(a)(1) states that a failure to design and construct covered public accommodation buildings and facilities that are readily accessible to and useable by people with disabilities, as required by the ADA and the regulation enacted thereunder in 28 C.F.R. Part 36, is discriminatory and violates the ADA.

47.     Based upon a public records search, Plaintiff is informed and believes and based thereon alleges that many parts of the CCA campus, and The Panoramic Residences student housing, were designed for first occupancy on or after January 26, 1993, and that as to the pre-existing facilities, Defendant CCA has modified and altered them on or after January 26, 1993, in a manner that affects the usability and accessibility of these facilities.

48.     42 U.S.C. section 12183(a)(2) prohibits:

>      (2) with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the

- 14 -

bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

Sections 36.402 and 36.403 of 28 C.F.R. Part 36 contain the regulations called for and referenced in 42 U.S.C. section 12183(a)(2).  As enforceable at the time of the incidents alleged herein, section 36.402 of 28 C.F.R. Part 36 states, in pertinent part:

(a)   General.

(1) Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(2) An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.

(b)  Alteration. For the purposes of this part, an alteration is a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof.

(1)   Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions...

(2)  If existing elements, spaces, or common areas are altered, then each such altered element, space, or area shall comply with the applicable provisions of appendix A to this part.

Section 36.403(a) of 28 C.F.R. Part 36 requires additional "path of travel" accessibility work to be conducted in connection with certain alterations. That section, as enforceable at the time of the incidents alleged herein states, in pertinent part:

(a)  General. An alteration that affects or could affect the usability of or access to an area of a facility that contains a primary function shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the cost and scope of such alterations is disproportionate to the cost of the overall alteration.

Section 36.403(e) defines a path of travel as follows:

(e)  Path of Travel.

(1)    A 'path of travel' includes a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including

- 15 -

sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility.

    (2)    An accessible path of travel may consist of walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors, rooms, and other improved areas; parking access aisles; elevators and lifts; or a combination of these elements.

    (3)    For the purposes of this part, the term 'path of travel' also includes the restrooms, telephones, and drinking fountains serving the altered area.

49.    Student housing is covered by the ADA.  28 C.F.R. § 36.406(e).  Defendants CCA and Latitude 38, and each of them, is a provider of student housing under the ADA. Each of them is in violation of the ADA Guidelines and the ADA Accessibility Standards with regards to The Panoramic Residences.  On information and belief, CCA also is in violation of the ADA Guidelines and the ADA Accessibility Standards with regards to its other student housing.

50.    Other access barriers may exist at both campuses.  Plaintiff will seek leave to amend this Complaint after a site survey of the premises by an access consultant, pursuant to the holding of the Ninth Circuit Court of Appeals in *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008).

**Failure to make Reasonable Modifications in policies, practices and procedures**

51.    In addition, Defendants have failed 42 U.S.C. section 12182(b)(2)(A)(ii) "to make reasonable modifications in policies, practices and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  Based on the facts and allegations pled herein, despite Plaintiff's requests Defendants failed and refused to modify their policies, practices and procedures in that they failed to have a scheme, plan or design to assist Plaintiff and/or others similarly situated in enjoying and utilizing Defendants' services, facilities, privileges, advantages or accommodations, as required by the ADA.  Additionally, Defendants conspicuously failed to adopt required policies and procedures to allow people with disabilities to navigate the campus, and the shuttle effectively.

///

///

**Failure to provide accessible shuttle services**

52.     Defendant Storer has violated the ADA's stricture that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C.A. § 12184. "Discrimination" under this section includes but is not limited to the following:

- "the failure of such entity to—

  (A) make reasonable modifications consistent with those required under section 12182(b)(2)(A)(ii) of this title;

  (B) provide auxiliary aids and services consistent with the requirements of section 12182(b)(2)(A)(iii) of this title; and

  (C) remove barriers consistent with the requirements of section 12182(b)(2)(A) of this title and with the requirements of section 12183(a)(2) of this title";

- "the purchase or lease by such entity of an over-the-road bus which does not comply with the regulations issued under section 12186(a)(2) of this title"; and

- "any other failure of such entity to comply with such regulations."

42 U.S.C.A. § 12184(b)(2)-(4).  An "over the road bus" means "a bus characterized by an elevated passenger deck located over a baggage compartment."  42 U.S.C.A. § 12181.  Over-the-road buses purchased and/or lease pursuant to the regulations pursuant to section 12186(a)(2) must be "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  49 C.F.R. § 37.103.

53.     Defendant Storer is a private entity that is primarily engaged in the business of transporting people for profit and has engaged in a contract to transport people on behalf of Defendant CCA.  Its operations affect commerce.  The buses it uses to transport CCA students have an elevated passenger deck located over a baggage compartment. It operates a fixed route system as defined in 49 C.F.R. § 37.3.

///

54.     Defendant Storer advertises that it operates approximately 350 vehicles and has over 500 employees. It serves the entire Northern California region.  In 2016 it received an award from United Motorcoach Association in the "Large Operator Category."  Based on those facts, Plaintiff is informed and believes and thereupon alleges that Defendant is a Large Operator and a Class I motor carrier as defined by 49 C.F.R. § 37.3

55.     On the basis that it has been more than 26 years since these requirements went into effect, and more than 19 years since the requirement for accessible vehicles went into effect; and that the over-the-road buses Defendant Storer has provided for use as the CCA shuttle appear fairly new and in good condition, Plaintiff, is informed and believe that Defendant Storer has purchased and/or leased its buses since 2000.  Defendant Storer has purchased these buses, and uses them for the shuttle, without complying with the regulations issued under 42 U.S.C. section 12186(a)(2) and without ensuring they are "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  49 C.F.R. § 37.103.

56.     In requiring that Plaintiff and other persons with mobility disabilities identify in advance what routes and times they want to use the shuttle, and notify Defendant Storer 24 hours in advance of any changes, at all times relevant to this Complaint Defendant Storer has failed to provide Plaintiff services equivalent to the service provided able-bodied rider with respect to schedule, geographic area of service and hours and days of service.

57.     Moreover, Defendant Storer has violated other regulations promulgated under section 12186, including:

- Failing to "ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." 49 C.F.R. § 37.173.  "Training to proficiency" also includes, "training in proper operation and maintenance of accessibility features and equipment, boarding assistance, securement of mobility aids, sensitive and appropriate interaction with passengers with disabilities, handling and storage of mobility devices, and familiarity with the requirements of this

- 18 -

subpart." 49 C.F.R. § 37.209.

- Failing to maintain the accessible features of its buses.  49 C.F.R. § 37.161.

- Failing to use wheelchair securement systems, failing to assist individuals with disabilities with the use of securement systems, ramps and lifts, and requiring individuals to transfer out of their wheelchairs.  49 C.F.R. § 37.165.

- Failing to ensure personnel make use of accessibility-related equipment or features required by the regulations and failing to make available to individuals with disabilities adequate information concerning transportation services.  49 C.F.R. § 37.167.

- Failure to ensure that by October 29, 2012, 100 percent of its buses were accessible to people using wheelchairs.  49 C.F.R. § 37.185.

Each of the violations of these regulations is a separate violation of 42 U.S.C.A. § 12184(b)(4)(B).

58.     Defendant Storer also is in violation of the general anti-discrimination provisions of the ADA.  Its failure to provide accessible buses or to modify its policies and practices denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the shuttle service and of its buses.  42 U.S.C.A. § 12182(a).  It provided Plaintiff, and all similarly situated persons, an unequal benefit.  42 U.S.C.A. § 12182(b).  It utilizes standards or criteria or methods of administration that have the effect of discriminating on the basis of disability.  42 U.S.C.A. § 12182(b).   It fails to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. *Id.* at 12182(b)(2)(ii).  It fails to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.  *Id*. at 12182(b)(2)(iii).

59.     Defendant Storer failed to remove transportation barriers in its existing vehicles where such removal is readily achievable and failed to make such services, facilities, privileges, advantages, or accommodations available through alternative methods. *Id.* at 12182(b)(2)(iv)-(v). Based on its sized and resources as previously alleged herein, Plaintiff is informed and believes

- 19 -

1  and thereupon alleges that it is readily achievable for Defendant Store remove such barriers and

2  provide its services, facilities, privileges, advantages, or accommodations available through

3  alternative methods.

4     60.    Defendant CCA is required to comply with the requirements pertaining to

5  vehicles and transportation systems in the regulations issued by the Secretary of Transportation

6  pursuant to section 306 of the Act. 28 C.F.R. § 36.310(c).

7     61.    As a "public accommodation that provides transportation services, but that is not

8  primarily engaged in the business of transporting people" Defendant CCA is subject to both the

9  Department of Justice regulations and transportation regulations promulgated by the Department

10 of Transportation under the ADA.  28 C.F.R. § 36.310(a)(1), (c); 49 C.F.R. § 37.21(a)(3), (c).

11 These regulations apply specifically to private colleges providing transportation services.  28

12 C.F.R. § 36.310(a)(2); 49 C.F.R. § 37.25.

13    62.    Defendant CCA operates a fixed-route transportation system under contract with

14 Storer Transportation.  https://portal.cca.edu/essentials/transportation/cca-intercampus-shuttle/,

15 last visited February 5, 2020.  "Operates includes, with respect to a fixed route or demand

16 responsive system, the provision of transportation service by a public or private entity itself or by

17 a person under a contractual or other arrangement or relationship with the entity."  49 C.F.R. §

18 37.3.  Its shuttle service is a "fixed-route transportation system," meaning "a system of

19 transporting individuals (other than by aircraft), including . . . the provision of transportation

20 service by private entities . . .  on which a vehicle is operated along a prescribed route according to

21 a fixed schedule."  49 C.F.R. § 37.3.  CCA uses over-the road style buses, meaning "a bus

22 characterized by an elevated passenger deck located over a baggage compartment."  *Id.*

23 Therefore, CCA is subject to subsection (b)(2)(D) of 42 U.S.C. § 12182:

24    For purposes of subsection (a), discrimination includes (I) the purchase or ease  of
       an over-the-road bus which does not comply with the regulations issued under
25     section 12186(a)(2) of this title by a private entity which provides transportation of
       individuals and which is not primarily engaged in the business of transporting
26     people, and (II) any other failure of such entity to comply with such regulations.

27

28

63.     Therefore, CCA is required to lease over-the-road buses that comply with both 49 C.F.R. § 38.23 and part 38 subpart G.  49 C.F.R. § 37.7(c).  Section 38.23 requires, "All vehicles covered by this subpart shall provide a level-change mechanism or boarding device (*e.g.*, lift or ramp) . . . and sufficient clearances to permit a wheelchair or other mobility aid user to reach a securement location [inside the bus]."  49 C.F.R. § 38.23(a).  Part 38 subpart G reiterates the requirement to provide a wheelchair lift on each bus.  49 C.F.R. § 38.159(a)(1).

64.     In short, CCA's shuttle service must, as a matter of law, make all of its buses' wheelchair accessible, not require her to request them *ad hoc*.  Because CCA does not provide wheelchair lifts on all its buses, it violates the ADA.

65.     As a public accommodation that operates a shuttle service, it also is subject to the general anti-discrimination provisions of the ADA. 42 U.S.C. § 12184(b)(2).  Violations of the general anti-discriminations provide a separate and distinct basis for failure to provide full and equal access to the shuttle service.

66.     Defendant CCA operates its shuttle system on a contract with Defendant Storer.  The ADA explicitly prohibits covered entities such as Defendant "directly, or through contractual, licensing, or other arrangements," engaging in actions otherwise prohibited by title III. 42 U.S.C. § 12182(b)(1)(A)(i); 49 C.F.R. § 37.3.  As an operator of the shuttle service, Defendant CCA is liable on its own account for violations of the regulations pertinent to it as a shuttle operator, and also jointly and severally liable for Defendant Storer's violations as described above.

67.     Based on the facts and allegations herein, Plaintiff has been damaged and will suffer irreparable harm unless Defendants are ordered to discontinue business at CCA and its facilities, and to cease business as a shuttle service or: (i) remove architectural and other barriers and otherwise obey the requirements of the ADA, and (ii) adopt policies and procedures that comport with the requirements of the ADA with respect to the enjoyment of the facilities by persons with disabilities.

68.     Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the

disability community.  Plaintiff alleges there is a national public interest in requiring accessibility

in places of public accommodation.  Plaintiff has no adequate remedy at law to redress the

discriminatory conduct of Defendants.  Plaintiff desires to fully-utilize Defendants' goods and

services but is deterred from doing so fully because of the barriers set forth herein.  Accordingly,

Plaintiff alleges that a prohibitory or mandatory injunction is necessary to assure that Defendants

comply with the applicable requirements of the ADA.

### Failure to Provide Accessible Student Housing

69.    Defendant CCA is a public accommodation because it is a "undergraduate, or

postgraduate private school, or other place of education." 42 U.S.C.A. § 12181.  Its dorms also

are public accommodations as "housing at a place of education' which means "housing operated

by or on behalf of an elementary, secondary, undergraduate, or postgraduate school, or other

place of education, including dormitories, suites, apartments, or other places of residence." 28

C.F.R. § 36.104.

70.    Accessible graduate student housing must be provided at a variety of price points

so that students with disabilities have the same variety of choice as other students.  "Apartments

or townhouse facilities that are provided by or on behalf of a place of education, which are leased

on a year-round basis exclusively to graduate students or faculty and do not contain any public

use or common use areas available for educational programming, . . . shall comply with the

requirements for residential facilities in sections 233 and 809 of the 2010 Standards."  28 C.F.R.

§ 36.406(e), 28 CFR 35.151(f).  ADAS standard 233.3.5 states, "Dispersion. Residential

dwelling units required to provide mobility features . . . shall be dispersed among the various

types of residential dwelling units in the facility and shall provide choices of residential dwelling

units comparable to, and integrated with, those available to other residents."

71.    Defendant told Plaintiff that it did not have any accessible housing at the lower

price point for double-occupancy.  It admitted a violation of ADAS and therefore of the ADA.

72.    Defendant CCA violated the ADA in a second fashion when it refused Plaintiff's

request that in the absence of accessible double-occupancy housing, she be provided a single

room at the double room price.   "A public accommodation shall make reasonable modifications

in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations."  28 C.F.R. § 36.302.  Here, the only rooms that were accessible are single rooms.  Defendant has the obligation to modify its pricing policy to provide pricing choice, as required by ADAAS 233.3.5.

WHEREFORE, Plaintiff requests relief as outlined below.

**SECOND CLAIM**
**As to Defendant California College of the Arts Only**
**(Violation of the Rehab Act of 1973, 29 U.S.C. 794, et seq.)**

73.     Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff has been and continues to be excluded from the participation in, be denied the benefits of, or be subjected to discrimination by CCA, a program receiving Federal financial assistance.  Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance" 29 U.S.C. § 794; 24 C.F.R. § 8.4(a). Such programs and activities are prohibited from discriminating against qualified individuals with disabilities because a "recipient's facilities are inaccessible to or unusable by individuals with handicaps." *see* 24 C.F.R. § 8.20.

74.     Upon information and belief, at all times relevant to this action, Defendant CCA was a recipient of federal funding within the meaning of Section 504 of the Rehabilitation Act ("Section 504").

75.     As a recipient of federal funds, Defendant CCA must operate its facilities so that the program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 24 C.F.R. § 8.24.  This includes compliance with the Uniform

- 23 -

Federal Accessibility Standards (UFAS) and maintenance of accessible features.  24 C.F.R. § 8.32.

76.     Plaintiff is a qualified individual with a disability within the meaning of Section 504 and is "otherwise qualified" to participate in Defendant's program, *i.e.*, to attend school and be a tenant of Defendant CCA.

77.     Defendant CCA has intentionally violated Section 504 by discriminating against disabled persons, including Plaintiff by, among other things:

a.   Failing to grant reasonable accommodation requests;

b.   Failing to implement lawful reasonable accommodation policies;

c.   Failing to make their premises accessible to and usable by students with disabilities;

d.   Failing or delaying maintenance and repairs of accessible features on both campuses;

e.   Failing to ensure that Plaintiffs and others similarly situated have equal access to campus housing;

f.   Failing to comply with Uniform Federal Accessibility Standards, including but not limited to Section 4, Accessible Elements and Spaces.

78.     By their policy and practice of discriminating against and failing to reasonably accommodate students and others with mobility disabilities, Defendants violate section 504 of the Rehabilitation Act.  29 U.S.C. § 794.

79.     Defendant's stubborn refusal to provide Plaintiff and other disabled students with accessible paths of travel, access to common area amenities and to accessible student housing, particularly when on actual notice of the ongoing problems, demonstrates a knowing and conscious disregard for the law in general and the rights of disabled students in particular.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

80.     As a result of Defendant's acts and omissions, Plaintiff suffered actual harms and losses including but not limited to physical injuries and embarrassment, humiliation, degradation and emotional distress because of the discrimination that she experienced and other unlawful acts

1    of Defendants.

2         81.    Plaintiff's harms and losses are ongoing so long as Defendant does not modify its

3    policies and procedures and provide fully accessible facilities for Plaintiff and other persons with

4    mobility disabilities.

5         82.    Plaintiff has no adequate remedy at law to compensate her for the loss of

6    opportunity to enjoy the amenities for which she pays and therefore seek.  Accordingly, Plaintiff

7    alleges that a prohibitory or mandatory injunction is necessary to assure that Defendant CCA

8    complies with the applicable requirements of the Rehab Act.

9         WHEREFORE, Plaintiff requests relief as outlined below.

10

11                                **THIRD CLAIM**
     **As to Defendants California College of the Arts, Smartspace and Latitude 38 Only**
12              **(Violation of the Fair Housing Amendments Act,**
                        **42 U.S.C. § 3601 *et seq.*)**

13

14        83.    Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads

15   and incorporates herein by reference), Plaintiff has been and continues to be discriminated against

16   in the provision of housing by Defendants CCA, Smartspace and Latitude 38.  The federal Fair

17   Housing Amendments Act (FHAA) makes it unlawful for a housing provider "[t]o discriminate in

18   the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter

19   because of a handicap of that buyer or renter, a person residing in or intending to reside in that

20   dwelling after it is sold, rented, or made available; or any person associated with that buyer or

21   renter." 42 U.S.C. § 3604(f)(1); 24 C.F.R. § 100.202(a).

22        84.    It is also unlawful under the FHAA "[t]o discriminate against any person in the

23   terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

24   facilities in connection with such dwelling, because of a handicap of that person; or a person

25   residing in or intending to reside in that dwelling after it is sold or made available; or any person

26   associated with that person." 42 U.S.C. § 3604(f)(2); 24 C.F.R. § 100.202(b).

27        85.    Discrimination under the FHAA includes "a refusal to make reasonable

28   accommodations in rules, policies, practices, or services, when such accommodations may be

necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(B); 24 C.F.R. § 100.204(a).

86.     Discrimination under the FHAA also includes "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of …handicap." 24 C.F.R. § 100.65(b)(2).

87.     Defendants, and each of them, are a multifamily housing provider subject to the FHAA.

88.     Plaintiff is a qualified individual with a disability within the meaning of FHAA.

89.     Defendants' actions and omissions discriminate against Plaintiff solely because of her disability in violation of the FHAA. Defendant's discriminatory conduct includes but is not limited to:

> a.  Failing to make their premises accessible to and usable by tenants with disabilities;
>
> b.  Failing to comply with construction standard for disability access under 42 USC 3604(f)(3)(C)l;
>
> c.  (as to CCA only) Failing to grant reasonable accommodation requests; and
>
> d.  (as to CCA only) Failing to implement lawful reasonable accommodation policies.

Defendants violations of the FHAA are ongoing.  Defendants, and each of them, have harmed and will continue to harm Plaintiff in the future.

90.     Because Defendants' discriminatory and wrongful conduct is ongoing, Plaintiff is in imminent harm of further injury.  Injunctive relief is an appropriate remedy.

91.     Defendants' stubborn refusal to grant reasonable accommodation requests and refusal to make the premises accessible to and useable by people with disabilities such as Plaintiff demonstrates a knowing and conscious disregard for the law in general and the rights of disabled tenants in particular.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

92.     As a result of Defendants' discriminatory acts and omissions, Plaintiff suffered

actual harms and losses including but not limited to physical injuries and physical degradation, embarrassment and emotional distress.

WHEREFORE, Plaintiff requests relief as outlined below.

**FOURTH CLAIM**
**Against Defendants California College of the Arts, Smartspace and Latitude 38 Only**
**(Violation of the Fair Employment and Housing Act,**
**Cal. Government Code § 12900 *et seq.*)**

93.     Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff has been and continues to be discriminated against in the provision of housing by Defendants CCA, Smartspace and Latitude 38.  The California Fair Employment and Housing Act (FEHA) makes it unlawful to "otherwise make unavailable or deny a dwelling based on discrimination because of…disability." Cal. Gov't Code § 12955(k).

94.     FEHA further provides that it is unlawful "[f]or any person subject to the provisions of the [Unruh Civil Rights Act] section 51 of the Civil Code … to discriminate against any person" on any basis protected under FEHA. Cal. Gov't Code § 12955(d).

95.     FEHA further provides that "[i]t is an unlawful practice…for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51…" Cal. Gov't Code § 12948.

96.     Defendants CCA, Smartspace and Latitude 38 provide multifamily housing subject to FEHA.

97.     Plaintiff is an individual with a disability within the meaning of FEHA.

98.     The actions and omissions of Defendants CCA, Smartspace and Latitude 38 discriminate against Plaintiff solely because of her disability in violation of FEHA. Defendants' discriminatory conduct includes but is not limited to:

    a.  Failing to make their premises accessible to and usable by tenants with disabilities;

    b.  Failing to design and construct accessible housing in violation of California. Government Code section12955.1; and

c.   (as to Defendant CCA only) Failing to grant reasonable accommodation requests;

d.    (as to Defendant CCA only) Failing to implement lawful reasonable accommodation policies.

Defendants' violations of FEHA have harmed and will continue to harm Plaintiff in the future.

99.   The stubborn refusal of Defendants CCA, Smartspace and Latitude 38 to provide disabled tenants with accessible housing demonstrates a knowing and conscious disregard for the law in general and the rights of disabled tenants in particular.  Such conduct justifies an award of, punitive and exemplary damages in addition to all other relief sought.

100.   As a result of Defendants' acts and omissions, Plaintiff suffered actual harms and losses including but not limited to physical injuries and physical pain, degradation, embarrassment and emotional distress.

101.   Plaintiff's harms and losses are ongoing so long as Defendants, and each of them, do not modify their policies and procedures. Plaintiff has no adequate remedy at law to compensate her for the loss of opportunity to enjoy the amenities for which she pays and therefore injunctive relief is an appropriate remedy.

WHEREFORE, Plaintiff requests relief as outlined below.


**FIFTH CLAIM**
**Against All Defendants**
**(Violation of the Disabled Persons Act,**
**California Civil Code Sections 54 and 54.1)**

102.   Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff alleges that Defendants have discriminated against Plaintiff and violated Plaintiff's rights under sections 54 and 54.1 of the California Civil Code.  At all times relevant to this Action, California Civil Code sections 54 and 54.1 have provided that physically disabled persons are not to be discriminated against because of their physical disabilities and that they shall have full and equal use of public facilities and other public places.

103.    Section 54(a) of the California Civil Code states that individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics and physicians' offices, public facilities and other public places.

104.    Plaintiff is an individual with a disability as defined in California Government Code section 12926.  Defendants, and each of them, are public accommodations within the meaning of the DPA.

105.    California Civil Code section 54.1 (a)(1) provides, in pertinent part:

> 54.1(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

106.    California Health & Safety Code section 19955 provides, in pertinent part:

> The purpose of this part is to ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part 'public accommodation or facilities' means a building, structure, facility, complex or improved area which is used by the general public...  When sanitary facilities are made available for the public, clients or employees in such accommodations or facilities they shall be made available for the handicapped.

107.    California Health & Safety Code section 19956 provides, in pertinent part: "All public accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code."

108.    California Health & Safety Code section 19956 became operative on July 1, 1970 and is applicable to all public accommodations constructed or altered after that date.

109.    Plaintiff is informed and believes and based thereon alleges, that CCA's, Smartspace's and Latitude 38's facilities were constructed and/or have been substantially altered or modified after July 1, 1970.

110.    Pursuant to the authority delegated by Government Code section 4450, *et seq*., the California State Architect promulgated regulations for the enforcement of the aforementioned provisions of the Health & Safety Code and the Government Code.  Since July 1, 1970, the State

Architect has developed and modified building regulations as set forth in the California Building Code and its antecedents.

111.    Plaintiff is informed and believes, and based thereon alleges, that construction, alterations, remodeling and/or renovations have been conducted at the premises since July 1, 1970.  The construction, alterations, remodeling and/or renovations were conducted in violation of the above provisions of California law and the CBC.

112.    A violation of the above referenced sections of the Health & Safety Code and the Title 24 regulations adopted thereunder constitutes a violation of the general anti-discrimination provisions Civil Code sections 54 and 54.1.

113.    Each violation of the Americans with Disabilities Act of 1990 also constitutes a violation of sections 54(c) and 54.1(d) of the California Civil Code, thus independently justifying an award of damages and injunctive relief pursuant to California law.  Plaintiff alleges that she has been denied such full and equal access as required by California law which incorporates Title III of the ADA, by all Defendants, and each of them.

114.    Section 54.3 of the California Civil Code provides that any person, firm or corporation that denies or interferes with the admittance to or enjoyment of the public facilities as specified in sections 54 or 54.1 thereof or who otherwise interferes with the rights of an individual with a disability under sections 54 or 54.1 shall be liable for each such offense for the actual damages, and up to three times actual damages, but in no case less than $1,000, and such attorneys' fees as may be determined by the Court.

115.    These violations of Plaintiff's rights as alleged have resulted in the denial to Plaintiff of full and equal access to California College of the Arts, to its housing, to the shuttle service and the goods and services offered, and have caused Plaintiff to suffer the damage and harms set forth and alleged in this Complaint.

116.    In addition, as to Defendants CCA, Smartspace and Latitude 38 only, the student housing at CCA is a housing accommodation within the meaning of Civil Code section 54.1(b)(2).

117.    Based upon the foregoing, Defendants CCA, Smartspace and Latitude 38, and each of them, have violated their obligation to provide full and equal access to housing under the DPA

as follows:

     a.  Failure to maintain their housing in compliance with accessibility standards in effect at the time of construction (CBC Section 1106A.1);

     b.  Failure and refusal to maintain their accessible features;

     c.  Failing to make their premises accessible to and usable by tenants with disabilities;
     (As to Defendant CCA only) Failing to grant reasonable accommodation requests; and

     d.  (As to Defendant CCA only) Failing to implement lawful reasonable accommodation policies.

118.    Plaintiff alleges that these discriminatory acts and omissions were intentional for the reasons stated above. The physical barriers to access complained of herein as well as the failures to adopt and modify policies and procedures are patent barriers to people with mobility disabilities and are of an obvious and intuitive nature and demonstrate an intent to deny Plaintiff's rights.  Parties which own and/or operate commercial facilities are familiar with the requirements for the provision of accessible features and policies, for use by people with disabilities and are aware that such matters are governed by the ADA.  Defendants intentionally allowed the barriers complained of herein to remain at the Store and its facilities and failed to adopt or modify policies and procedures to provide access to Plaintiff and persons similarly situated.  Plaintiff's damages resulted from Defendants' intentional acts and omissions.

WHEREFORE, Plaintiff prays for damages and relief as hereinafter stated.

**SIXTH CLAIM**
**Against All Defendants**
**(For Violation of the Unruh Act, Section 51 of the California Civil Code)**

119.    At all times relevant to this action, section 51 of the California Civil Code has provided that physically disabled persons are not to be discriminated against because of their physical disabilities.  Based on the facts and allegations pled in this Complaint (which Plaintiff re-pleads and incorporates herein by reference), Plaintiff alleges that Defendants, and each of them, have discriminated against Plaintiff and violated Plaintiff's rights under section 51 of the

1    California Civil Code.

2          120.    Plaintiff is a person with a disability as defined by section 12926 of the California

3    Government Code. Defendants, and each of them, are a business establishment as defined in the

4    Unruh Act.

5          121.    California Civil Code section 51(b) provides, in pertinent part:

6          (b)    All persons within the jurisdiction of this state are free and equal, and no
          matter what their sex, race, color, religion, ancestry, national origin, disability, or
7          medical condition are entitled to the full and equal accommodations, advantages,
          facilities, privileges, or services in all business establishments of every kind
8          whatsoever

9          122.    California Civil Code section 52(a) provides as follows:
10
11          (a)    Whoever denies, aids or incites a denial, or makes any discrimination or
          distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense
12          for the actual damages, and any amount that may be determined by a jury, or a
          court sitting without a jury, up to a maximum of three times the amount of actual
          damage but in no case less than four thousand dollars ($4,000), and any attorney's
13          fees that may be determined by the court in addition thereto, suffered by any person
          denied the rights provided in Sections 51, 51.5, or 51.6.
14

15          123.    Each violation of the Americans with Disabilities Act of 1990 also constitutes a

16    violation of section 51(f) of the California Civil Code, thus independently justifying an award of

17    damages and injunctive relief pursuant to California law.  Plaintiff alleges that she has been

18    denied such full and equal access as required by California law which incorporates Title III of

19    the ADA.

20          124.    In addition, Defendants CCA, Smartspace and Latitude 38, and each of them, are

21    also a business establishment in their operation of student housing under the Unruh Act because

22    they are a housing accommodation that provides goods, services and facilities in exchange for

23    money.

24          125.    As a business establishment that provides housing, the discriminatory conduct of

25    Defendants CCA, Smartspace and Latitude 38 includes but is not limited to:

26                 a.    Failing to make their student housing accessible to and usable by tenants with

27                      disabilities;

28                 b.    (As to Defendant CCA only) Failing to grant reasonable accommodation

- 32 -

1    requests; and

2       c.  (As to Defendant CCA only) Failing to implement lawful reasonable

3            accommodation policies.

4       126.    Plaintiff alleges that these discriminatory acts and omissions were intentional for

5  the reasons stated above. The physical barriers to access complained of herein as well as the

6  failures to adopt and modify policies and procedures are patent barriers to people with mobility

7  disabilities and are of an obvious and intuitive nature and demonstrate an intent to deny

8  Plaintiff's rights.  Parties which own and/or operate commercial facilities are familiar with the

9  requirements for the provision of accessible features and policies, for use by people with

10  disabilities and are aware that such matters are governed by the ADA.  Defendants intentionally

11  allowed the barriers complained of herein to remain at the CCA campus and their facilities and

12  failed to adopt or modify policies and procedures to provide access to Plaintiff and persons

13  similarly situated.  Plaintiff's damages resulted from Defendants' intentional acts and omissions,

14  and each of them.

15       WHEREFORE, Plaintiff prays for damages and relief as hereinafter stated.

16

17                              **PRAYER FOR RELIEF**

18       A.      For injunctive relief pursuant to the ADA, 42 U.S.C. section 12188, the Rehab Act,

19  29 US.C. section 794, and the Unruh Act, section 52 of the California Civil Code.  Plaintiff

20  requests that this Court enjoin Defendants from continuing to do business prior to removing all

21  architectural and policy barriers and otherwise complying with the federal and State

22  antidiscrimination laws or in the alternative, that this Court issue a mandatory injunction requiring

23  Defendants immediately to:

24       a.  Remove all access barriers in common areas and public space in compliance with

25            the standards set forth in the ADAAG, ADAS, UFAS and the CBC;

26       b.  Remove all access barriers in housing in compliance with the standards set forth in

27            the UFAS and CBC;

28

1   c. Provide accessible transportation to include proper equipment, maintenance, and

2    trained personnel;

3   d. Implement lawful reasonable accommodation policies and procedures.

4 Plaintiff does not request any injunctive relief pursuant to section 55 of the California Civil Code

5 or section 19953 of the California Health & Safety Code.

6   B. For actual damages pursuant to The Rehab Act, The Fair Housing Act, The Fair

7 Employment and Housing Act, and California Civil Code sections 52, 54.3, 3281 and 3333;

8   C. For a trebling of actual damages, but in no event less than $4,000 in damages

9 pursuant to California Civil Code section 52 for each and every violation of California Civil Code

10 section 51;

11   D. In the alternative to the damages pursuant to California Civil Code section 52 in

12 Paragraph B above, for a trebling of actual damages, but in no event less than $1,000 in damages

13 pursuant to California Civil Code section 54.3 for each and every violation of California Civil

14 Code section 54.1 and/or California Civil Code section 54;

15   E. For attorneys' fees and costs pursuant to the ADA, The Rehab Act, The Fair

16 Housing Act, The Fair Employment and Housing Act, California Civil Code §52, California Civil

17 Code §54.3, and California Code of Civil Procedure §1021.5; and

18   F. For such other further relief as the Court deems proper.

19

20

21 Date: February 10, 2020     DERBY, McGUINNESS & GOLDSMITH, LLP

22           */s/Celia McGuinness*

23           By CELIA McGUINNESS, Esq.
            Attorneys for Plaintiff

24           JILLIAN CROCHET

25

26        **DEMAND FOR JURY**

27   Plaintiff hereby demands a jury for all claims for which a jury is permitted.

28

1    Date: February 10, 20200                 DERBY, McGUINNESS & GOLDSMITH, LLP

2                                                   _____/s/Celia McGuinness_____

3                                                   By CELIA McGUINNESS, Esq.
                                                     Attorneys for Plaintiff
4                                                   JILLIAN CROCHET

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES