United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILLIAN CROCHET,<br><br>    Plaintiffs,<br><br>  v.<br><br>CALIFORNIA COLLEGE OF THE ARTS, et al.<br><br>    Defendants. | Case No. C 20-01057 WHA<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

In this disability-discrimination action, plaintiff moves for a mandatory preliminary injunction. For the reasons below, the motion is **DENIED**.

## STATEMENT

In 2017, plaintiff Jillian Crochet enrolled as a graduate student at the California College of the Arts ("CCA"), a private college with campuses in San Francisco and Oakland. She suffers from a rare condition that causes ataxia, loss of sensation, and vision problems. Her condition limits her ability to stand, balance, and walk, and she uses a motorized wheelchair or a walker for mobility. Plaintiff's complaint alleges that she requires accommodations to make housing and transportation accessible. The complaint asserts disability-discrimination claims against CCA and other defendants that contract with CCA to provide student housing and transportation. In particular, it alleges that defendants discriminate against plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") and the Fair Housing Act (Compl.

¶¶ 1–2, 6, 11, 15, 21 66). Plaintiff's claims can be separated into two categories: housing and transportation.

In March 2019, plaintiff moved into student housing at the Panoramic Residences, a residence hall in San Francisco. The hall offers three room configurations: (1) double-occupancy units, which cost $12,691 per academic year; (2) single-occupancy units, costing $16,317 per year; and (3) "super" single-occupancy units, costing $20,461 per year. Plaintiff's motion states that she wanted to live in a double unit because it was the most affordable. She also required wheelchair-accessible housing. She asked the CCA's Director of Housing whether the double units were wheelchair accessible, to which the director allegedly replied, "I don't think so." CCA instead assigned plaintiff to a wheelchair-accessible "super" single unit. The motion explains that while plaintiff accepted this placement, she also made a "reasonable accommodation request" to reduce her rent to the lower rate charged to students living in double units. It further alleges that a CCA administrator denied this request during a phone call with plaintiff. CCA ended up charging plaintiff the intermediate single unit rate for her "super" single unit. Shortly after plaintiff filed the instant lawsuit, CCA informed plaintiff that "she may obtain a credit for the semester on her student account" that would cover the difference between the single unit rate she currently pays and the double unit rate she requested. Plaintiff still lives in the "super" single unit and remains poised to live there until she finishes school in May 2020. Plaintiff alleges that in failing to make double units accessible and then requiring her to pay a single rate, defendants unlawfully discriminate in violation of the Fair Housing Act and Title III of the ADA (Dkt. No. 6 at 9, 12).

Turning to plaintiff's transportation, CCA contracts with defendant Storer Transportation Services ("Storer") to provide large, over the road buses that act as student shuttles. The shuttles, which operate at no cost to students, run on a fixed route between Oakland and San Francisco campuses, including a stop at plaintiff's residence hall. Plaintiff's complaint alleges the buses do not all come equipped with accessibility ramps or lifts, so in order to ride an accessible bus, plaintiff must communicate her schedule to Storer ahead of time. Storer ordinarily requires 24 hours' advance notice for any schedule changes. Plaintiff argues that

2

this solution falls short of what the ADA requires and renders her unable to access student transportation on an equal basis with her classmates (Compl. ¶¶ 33–39). Importantly, in the time since plaintiff filed this motion, CCA has terminated operations of the shuttle for all students, including plaintiff, in response to the San Francisco Health Officer's Shelter in Place Order. The shuttle shall remain suspended "until further notice" (Sedano Decl. at Exh. E).

Plaintiff moves for a mandatory preliminary injunction against CCA only. Her motion requests that the injunction order CCA to (1) provide her with accessible housing at the rate she would pay in a double unit (or, alternatively, to retroactively grant her reasonable accommodation request for housing in a single unit at the double unit rate) and (2) provide wheelchair access on all shuttle buses.

**ANALYSIS**

To obtain a preliminary injunction, plaintiff must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Our court of appeals employs a "sliding scale" version of this test, meaning that "a stronger showing of one element may offset a weaker showing of another." *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**1. HOUSING INJUNCTION**

Plaintiff's motion requests an injunction that would allow her to pay a double unit rate while living in accessible housing. Our court of appeals has held that courts may issue mandatory preliminary injunctions to prevent irreparable harm, but not "where the injury complained of is capable of compensation in damages." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). Here, plaintiff can recover the difference between what she wants to pay and what she currently pays in damages, and CCA has offered her a credit to offset the higher rate in the meantime. Thus, plaintiff's motion may be disposed of on the second *Winter* element.

3

Plaintiff's motion argues that "[i]rreparable harm is presumed when a statute provides an injunctive relief remedy" (Dkt. No. 6 at 20). This overstates the principle's application to plaintiff's argument. In *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, which the motion cites, our court of appeals held that a court may "presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation" and also that "future violation[s] will occur" if plaintiff establishes that defendant has violated a civil rights statute like the Fair Housing Act. 251 F.3d 814, 827 (9th Cir. 2001). This does not characterize plaintiff's position. In *Silver Sage Partners*, plaintiffs had already prevailed at trial, so they had established that the city had violated the Fair Housing Act. *Id*. at 818. Plaintiff has not yet established a violation here.

The motion also argues that the Fair Housing Act and ADA specifically provide for injunctive relief and that "standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1074 (9th Cir. 1991). It remains true that both statutes provide for injunctive relief, but the possibility of injunctive relief under a statute does not greenlight mandatory preliminary injunctions when plaintiff's request only concerns money.

Here, plaintiff's motion requests a preliminary injunction forcing CCA to charge plaintiff the rate that a student renting a double unit would pay (Dkt. No. 6 at 8–9). The parties do not dispute that CCA has offered plaintiff a credit for the remainder of her student tenure that makes up the difference in cost between the rate she wants to pay and the one she currently pays. Plaintiff argues this offer would not rectify a violation, since plaintiff has had to pay the single unit rate "since at least Mid-May 2019" (Dkt. No. 24 at 17–18). If it turns out that CCA has violated the Fair Housing Act or the ADA, this credit certainly *would* be inadequate, and if plaintiff succeeds at trial or on summary judgment, she will be entitled to the remedies afforded by those statutes, including damages. At this point, however, damages remain beyond the scope of mandatory preliminary injunctions, which do not apply "where the injury complained of is capable of compensation in damages." *Anderson*, 612 F.2d at 1115. Since

4

this motion seeks a change in plaintiff's *rate of payment*, which remains a *damages* issue, her motion for a mandatory preliminary injunction ordering CCA to provide plaintiff with accessible housing at the double unit rate (or, alternatively, to retroactively grant plaintiff's request for a reasonable accommodation for housing in a single unit, paying double unit rate) is **DENIED**.

### 2. TRANSPORTATION INJUNCTION

Plaintiff's complaint claims that by requiring plaintiff to pre-schedule shuttles, rather than providing wheelchair access on all shuttles, CCA discriminates against her in violation the ADA. She motions for a mandatory preliminary injunction ordering CCA to provide wheelchair access on *all* buses (Dkt. No. 6 at 23).

Importantly, CCA's shuttle service has since ceased operations "indefinitely" due to the March 16 Shelter in Place Order that the City of San Francisco issued in response to the COVID-19 pandemic. No student has access to the shuttle. On March 17, George Sedano, Vice President for Student Affairs at CCA, submitted a declaration stating while the administration had initially hoped to begin in-person classes again on April 13, it now "appears more likely that in-person classes will continue to be suspended until the end of this academic term." The last day of classes and shuttle service "was scheduled to be May 8," and plaintiff "is on target" to earn her degree on May 16. CCA has offered to reimburse plaintiff for the cost of Uber for the remainder of the semester (Sedano Decl. ¶¶ 1, 3, 5–6, 9, Exh. E).

Because the shuttle remains poised to stay closed through May 8, CCA argues that plaintiff's motion has become moot. Our court of appeals has held that the "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). If COVID-19 forces CCA and Storer to cease operating the shuttle for the remainder of plaintiff's student tenure, then a mandatory preliminary injunction ordering CCA to use only wheelchair-accessible shuttles would not guard plaintiff against further transportation-related discrimination by the school.

Mr. Sedano's declaration states that classes will likely be held virtually for the remainder of the semester. CCA sent out a notice to students informing them that shuttle service will remain suspended "until further notice." Nothing in the record indicates that in-person classes will resume by May 8. Moreover, plaintiff only has one course to complete this semester, graded on a "pass/fail basis," and there exists "no reason to doubt that she will pass this course" (Sedano Decl. ¶¶ 3, 5, Exh. E). Thus, while CCA and Storer's alleged discrimination remains actionable, plaintiff's motion for a mandatory preliminary injunction is **DENIED AS MOOT**.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 9, 2020

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE